ROGER W. HARRISON, J. B. STROUD AND J. D. WILKINS, TRUSTEES OF THE FIRST BAPTIST CHURCH OF GREENSBORO, NORTH CARO-LINA, v. GUILFORD COUNTY; GEO. L. STANSBURY, CHAIRMAN; J. W. BURKE, R. C. CAUSEY, JOE F. HOFFMAN, FLAKE SHAW, ALL CONSTITUTING THE BOARD OF COMMISSIONERS OF GUILFORD COUNTY; A. C. HUDSON, SUPERVISOR OF TAXATION FOR GUILFORD COUNTY; D. L. DONNELL, TAX COLLECTOR FOR GUILFORD COUNTY; AND W. C. JOHNSON, TREASURER FOR GUILFORD COUNTY, NORTH CAROLINA.

(Filed 20 December, 1940.)

**1. Taxation § 20—**

A lot purchased by trustees of a church for the purpose of erecting a new church and Sunday school thereon adequate for the needs of the congregation, and, pending the accumulation of sufficient funds to build the new church, used exclusively for open air Sunday school and church meetings, is property held for religious purposes within the meaning of Article V, section 5, of the State Constitution, and the Legislature has power to exempt such property from taxation.

**2. Same—**

Statutes exempting specific property from taxation because of the purposes for which such property is held and used, must be strictly construed, when there is room for construction, against exemption and in favor of taxation.

**3. Statutes § 5a—**

The rule that certain statutes must be strictly construed does not require that they be stintingly or even narrowly construed, but only that everything shall be excluded from their operation which does not come within the scope of the language used, taking their words in their natural and ordinary meaning.

**4. Taxation § 20—**

   A lot purchased by trustees of a church for the purpose of erecting a new church, and pending the accumulation of sufficient funds to erect the new church, used exclusively for religious purposes, is property adjacent to the church property and reasonably necessary for the convenient use of the church property within the meaning of ch. 310, sec. 600 (3), Public Laws of 1939, exempting such property from taxation, even though the lot purchased, because of unavailability of adjoining land, is four or five blocks distant from the church, the word "adjacent" meaning lying close together but not necessarily in contact.

APPEAL by defendants from *Nettles, J.,* at 28 October, 1940, Civil Term, of GUILFORD.

Controversy without action duly submitted to the civil division of the municipal-county court of the city of Greensboro, and heard on appeal thereto in the Superior Court upon an agreed statement of facts as provided by sections 626, *et seq.,* of the Consolidated Statutes of North Carolina for determination as to "(1) Whether Guilford County and its officers had legally placed, fixed and assessed real property held by plaintiffs on the tax books of Guilford County" and "(2) Whether the plaintiffs were entitled to recover the amount of taxes assessed against them and which had been paid by them under protest."

Briefly stated, the agreed facts are these:

1. The plaintiffs, who are all of the elected, duly qualified and acting trustees of the First Baptist Church of Greensboro, North Carolina, in whom the legal title to the real estate of said church is vested, hold title to said property solely for the benefit, use and purposes of said church which is solely a religious organization—having existed continuously since 13 March, 1859. As such, said trustees hold the legal title to two tracts of land, upon one of which is located the church and Sunday school building now used and occupied by said church, upon the other of which is located a dwelling house known as the "First Baptist Church Parsonage," neither of which is listed or assessed for taxation. Said trustees also hold title to a third tract, "a vacant lot on the corner of North Mendenhall Street and Madison Avenue, purchased by the said church in 1938, upon which to build a new church and Sunday school building" to which this controversy relates.

2. Acting upon the assumption that said third tract of land is subject to taxation, the defendants have complied with the statutory machinery provided for the listing and assessing same for taxation at the rate of taxes duly levied for the year 1940, pursuant to which tax in the amount of $155.59 has been assessed against said tract. Upon demand for the payment thereof, the plaintiffs paid the amount of the tax on 1 November, 1940, under protest, and within thirty days next thereafter duly

made demand in writing for the return thereof. The demand was refused, and this controversy was submitted on 4 November, 1940.

3. On account of the fact that the present church and Sunday school enrollments of the First Baptist Church of Greensboro exceed the accommodations in the existing church and Sunday school building, and nineteen Sunday school classes, of more than 650 pupils, are meeting in the Masonic Temple, said church, by act of the congregation in April, 1937, started a building fund and began raising money with which to purchase a new site on which to erect a new and larger church and Sunday school building. Additional land adjoining the present church plant not being obtainable, the church, by authority of the congregation, in March, 1938, purchased and acquired the third tract, above described, for said purpose, and decided to build a new church on same, as soon as it could finance the building. At the time of the purchase of the newly acquired lot, the only buildings thereon were an old dwelling and an outhouse. The dwelling was rented for a few months and rent received was used exclusively for religious and church purposes. But because of its dilapidated condition the buildings were torn down and removed from the lot in the spring of 1939. Thereupon, "a portion of said lot was cleared and electric lights were put up under the trees, benches were placed upon it, and the lot prepared for use by Sunday school classes and organizations of the church in outdoor meetings." "On 25 June, 1939, the church held on the lot an open air service, at which service it was announced that the lot had been fully paid for, and the lot was at said time dedicated to God for church purposes." Since then "the lot has been used only by Sunday school classes and organizations of the church as a place for holding outdoor meetings." Pursuant to congregational act "plans are definitely in the making by the First Baptist Church to erect a new church and Sunday school building on said lot by 1944."

The boundaries of the lot embrace about six acres. While definite plans for the location of the new church building on said lot have not been made, "it is the plan of the church to locate the new building back from the streets somewhere near the center of the lot, to have entrances from at least two of the adjoining streets, and to use the land surrounding the church and Sunday school building for a yard, and for recreational purposes in connection with the church's work. . . . This proposed building measures 254 feet in one direction and 236 feet in the other."

The court below, being of opinion that the listing of and assessing tax on the third tract of land, which is the subject of this controversy, are "wholly illegal and invalid," entered judgment in favor of the plaintiffs

HARRISON *v.* GUILFORD COUNTY.

and against the defendants for the amount of the tax assessment, paid under protest, with interest and costs. Defendants appeal therefrom and assign error.

*York & Boyd, Wm. M. York, and C. T. Boyd for plaintiffs, appellees.*
*D. Newton Farnell, Jr., B. L. Fentress, and H. C. Wilson for defendants, appellants.*
*G. H. Jones of counsel for defendants, appellants.*

WINBORNE, J.  The question here is this: Does the property, which is the subject of this controversy, come within the definition of real property which is exempt from taxation under the statute in effect 1 January, 1940, Public Laws 1939, ch. 310, sec. 600 (3)? The effect of the ruling of the court below is that it does come within the meaning of the statute. Our opinion is accordant with that view.

While in Article V, section 3, of the Constitution of North Carolina, it is required that the power of taxation shall be exercised in a just and equitable manner, and shall not be surrendered, suspended, or contracted away, and that taxes on property shall be uniform as to each class of property, it is provided in section 5 of Article V that "The General Assembly may exempt cemeteries and property held for educational, scientific, literary, charitable or religious purposes . . ."

The General Assembly has provided in section 600 of ch. 310 of Public Laws of 1939 that "The following real property, and no other, shall be exempted from taxation . . . (3) Buildings, with the land upon which they are situated, lawfully owned and held by churches or religious bodies, wholly and exclusively used for religious worship or for the residence of the minister of any such church or religious body together with the addition adjacent land reasonably necessary for the convenient use of any such building . . ."

Upon the agreed facts the lot, which is the subject of this controversy, is, in good faith, held for, dedicated to and used for church purposes. It, therefore, comes within the class of property held for religious purposes which the General Assembly may exempt.

The question then arises: Has the General Assembly exempted it?

Statutes exempting specific property from taxation because of the purposes for which such property is held and used, are and should be construed strictly, when there is room for construction, against exemption and in favor of taxation. *United Brethren v. Comrs.,* 115 N. C., 489, 20 S. E., 626; *Trustees v. Avery County,* 184 N. C., 469, 114 S. E., 696; *Hospital v. Rowan County,* 205 N. C., 8, 169 S. E., 805; *Odd Fellows v. Swain,* 217 N. C., 632, 9 S. E. (2d), 365; *Hospital v. Guilford County, ante,* 673.

"By the rule of strict construction, however, is not meant that the statute shall be stintingly or even narrowly construed, . . . but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used . . ." *Stacy, C. J.,* in *S. v. Whitehurst,* 212 N. C., 300, 193 S. E., 657.

The words used in the statute must be given their natural or ordinary meaning. 71 C. J., 353; *Borders v. Cline,* 212 N. C., 472, 193 S. E., 826.

Applying these rules, we are of opinion and hold the clause in subsection 3 of section 600, which reads: "together with the addition adjacent land reasonably necessary for the convenient use of any such building" is sufficiently clear and broad enough to include the lot of land which is the subject of this controversy. What is meant by adjacent land? Webster, in defining the word "adjacent," says: "Objects are adjacent when they lie close to each other, but not necessarily in actual contact; as adjacent fields, villages." When given this ordinary meaning, adjacent land which is reasonably necessary for the convenient use of the building wholly and exclusively for religious purposes must lie close to, but not necessarily in contact with the land on which the building is situated.

The lot in question is stated to be four or five blocks away, but other adjoining lands were not available. The agreed facts show that the lot is reasonably necessary for the convenient use of the church, and is wholly and exclusively used for religious worship.

The judgment below is

Affirmed.